The opinion of the Court was now delivered by
Smith, C. J".
The question we are now called to decide is, whether, on the facts stated, Mr. Kidder’s estate was exempt from taxation.
The act of Feb. 8, 1791 (ed. 1805,'214), makes it the duty of the selectmen “ to assess the polls and estate within the town, according to the Rules and directions of the law, their just and equal proportion of all sums of money authorized and required to be raised.” This is equivalent to saying that all the polls and all the ratable estate shall be taxed. The omission to tax what is taxable is as illegal as the assessing of what is exempt from taxation.
The act of Dec. 19, 1808 (ed. 1805, 218), establishing the rates at which polls and ratable estates shall be valued, exempts the polls of ordained ministers, and certain others. Under this clause, I suppose, it was that Mr. Kidder's poll was not taxed in the assessment complained of. There is no exception as to ratable estate in respect of the owner. All real estate situate in the town, and all personal estate of the description mentioned in the act, let who may be the owner, is subject to taxation. If Mr. Kidder’s estate is exempt, it must be so because, by the usage of the State from the earliest times of which we have any knowledge, i. e. by the common law of the State, the estates of persons of his character and description have been exempt; and so the expressions in the statute — that all the estate within the town is to be taxed — *157 must be understood to mean only all liable, all not exempt from taxation.
It is certainly going a great way in construing tbis law, to admit of any exceptions when the statute contains none, and especially to exempt the estate of settled ordained ministers of the gospel, when the statute has expressly exempted the poll, (a)
It has been decided in tbis State, in the case of Kelley v. Bean and others, Selectmen of Warner, Hillsborough, May Term, 1798, “that a minister of the church and congregation in a town ” is not liable to be taxed. (b) We are not favored *158 witb tbe grounds or reasons of that decision. And, if we were, it does not come up to the present case. If ministers of the gospel of any description are exempt from taxation, it still remains to be determined what is the particular character and description of persons entitled to exemption, what is- the extent of the privilege.
Minister, or minister of the gospel, is a comprehensive term, and of uncertain signification. In examining the statute book we find various modes of expression used respecting ministers.
*159 In the Constitution, Art. VI., they are spoken of as public teachers of piety, religion, and morality.[1] In the statutes they are sometimes called ministers of the gospel; under that name they are excused from militia duty (ed. 1805, 252), enjoined to read the Sabbath act (p. 294), authorized to certify the qualifications of schoolmasters (p. 296).
Sometimes they are called ordained ministers of the gospel, a term less comprehensive in its signification; such, in the county where settled or permanently residing, are authorized to solemnize marriages (ed. 1805, 296).[2] In the Province Law (p. 51), settled ministers of the gospel are authorized to join persons in marriage. In the Province Law for maintenance of the ministry (p. 55), something like a definition of a settled minister is given. He is one settled, i. e. chosen, by the freeholders of the town, convened in public town meeting, as a minister for the supply of the town at a certain annual salary. He is called the settled minister of the town.
The language used by writers is to the same effect.
There seem to be three descriptions of persons in the ministry. 1st. Those who officiate in public teaching, &c., who are neither ordained nor settled. 2d. Those who are or have been ordained, but not connected with any particular church or society. Wise, 207. And 8d. Those who are ordained and settled in a particular town or parish, connected with a particular church aud congregation.
Those who are at all acquainted with the temper, views, aud habits of the first settlers of New England will not be surprised to learn that the clergy obtained, in early times, exemption from the burden of taxes.
It was a doctrine much inculcated at that day, and forms *160 an article in the Platform of Discipline, (a) “ that necessary and sufficient maintenance is due unto the ministers of the word, from the law of nature and nations, from the law of Moses, the rule of common reason, and, still more, from the law of revelation, which declares that the laborer is worthy of his hire, and requires that he who is taught in the word should communicate to his teacher in all good things, and that they which preach the gospel should live by the gospel.”
If the reasons for encouraging and supporting the clergy had been less weighty, and the authorities less decisive, still this privilege would in all probability have been granted. We know that 'the clergy of that day had great influence in all civil affairs. Nothing of importance was undertaken without their advice. They assisted in framing particular laws, and especially in digesting a civil code for the government and regulation of the colony. 1 Hutchinson, 251; 1 Holmes, American Annals, 366 ; Winthrop’s Journal, 197, 302. The legislative and the judicial departments resorted to the clergy for advice in all weighty and difficult affairs. Winthrop’s Journal, 236. Indeed, in those daj^s, the civil and ecclesiastical state were so blended that the one could not exist without the other. Town corporations were composed, and must be composed, wholly of church members. A vote of the town and a vote of the church was the same thing. The minister was at the head of the church, and consequently of the town. All political power was lodged in, and in the first instance exercised by, these small bodies. It is not extravagant, therefore, to say that the ministers could make and unmake magistrates at their pleasure. The ministers spoken of were those connected with particular churches and towns. (b) It was *161 necessary that those men who were devoted to the best interests of society should have a decent and honorable support. They richly deserved it. At that day the people were not reluctant in bestowing it. The influence of the clergy could command it. For some time it was unnecessary to raise taxes for this object. 1 Hutchinson, 876, &o.; Winthrop’s Journal, 176, 190. Some scrupulous persons, clergymen and others, entertained doubts about the lawfulness of maintenance by a salary. Taxes were considered as but another name for tithes, and they had not yet lost their aversion to tithes. Mass. Hist. Coll. I. 178 (reprinted 1806) ; Winthrop’s Journal, 42, 54, 58, 60, 217, 269; Hutchinson, Coll. Papers, 291, &c. At this time, when the clergy were supported by voluntary contributions from the people of their charge, it would have been absurd to tax the minister. This would have been taking from him by compulsion what was freely given. And when these scruples wore off (they were not calculated to be of long duration), and the law made provision for the support of the clergy, — making it the duty of the town to raise money, and empowering the magistrates, in case of neglect of towns, (a) to levy money by tax for the honorable support of the teacher, — it would have been absurd to tax the minister himself. This would have been taking from him with one hand what was bestowed with the other. And though taxing the minister of the town to other taxes — province and county, for example— is not quite so absurd as assessing him to the minister’s tax, yet, in the end, it comes nearly to the same thing. The *162 towns were bound to give their ministers a maintenance, an honorable support. What was taken from them to pay other taxes must be made up by increasing the minister’s tax; so that in the end it would come precisely to the same thing. Hence, no doubt, it became the usage for towns to omit taxing their ministers, and this exemption would necessarily be considered as a part of the minister’s compensation in the contract of settlement.
What has been mentioned, I have no doubt, gave rise to the custom or usage to exempt the minister of the town from taxation. It will enable us, also, to judge of the extent of the usage, in the absence of particular proof.
Governor Hutchinson, who knew the laws and customs of Massachusetts better than any man in his day, and perhaps before or since, tells us (1 Hutchinson, 395) that “ the clergy at all times have been exempt from all taxes for their persons, or estates under their own improvement; not merely because this was agreeable to the Levitieal law, but because they depended on the people, from year to year, for their support, and whatever was added to their annual expense by a tax, so mucli must have been added by the people to enable their minister to pay it.” The word clergy is broad enough, in its signification, to comprehend Mr. Kidder; he is a clergyman, still one of the clergy. But the reason assigned for the exemption leads to a more confined interpretation of the word ; namely, settled ministers. The clergy not taxable are those whom the people, i. e. a particular town or society, are bound to support, and who on their part are bound to minister in holy things. But where a clergyman does not depend on the people for support; where he is not the minister of any particular town or society, bound to preach to them, and they bound to support him, — the reason for exemption fails. If he is at liberty to preach or not to preach, the people are at liberty to tax or not to tax.
From this passage of Governor Hutchinson, we perceive, also, that there was another limitation in this exemption from paying taxes; namely, it only applies to estates under the improvement of the minister. Generally this will be the same *163 thing as saying that he shall not be taxed for estate in the town in which he is settled. If the estate lies in another town, it is taxable ; because the people there are supposed to have no equivalent for the exemption. The modern doctrine in Massachusetts is to the same effect. It now depends on statute, which, however, it is apprehended, has introduced no change in the law. All settled ministers, and their estates in the town where they are settled, or under their own actual improvement, are exempted from taxation, (a)
Mass. Hist. Coll. Y. 48. An action was brought in the county of Hampshire, Massachusetts, in 1797, where the plaintiff was a Baptist minister, living in Buckland, and preaching in a meeting-house in Chester. His hearers and church were of any part of the country who chose to associate with him. The question was whether he was a settled minister (the action was trespass against the assessors for an illegal assessment). The Court were of opinion that he was not a settled minister within the meaning of the statute, because he was not the settled minister of a town, parish, or religious corporation obliged to maintain a public teacher of religion, &c. ; a man’s being ordained over a voluntary association, formed by no act of government and bound by no law, is not [does not constitute him] a settled minister within the meaning of the act. The denomination of the plaintiff made no difference in the case. (b)
In Connecticut, we ai*e told (1 Trumbull, 421, 451) that, in 1698, the assembly passed an act, exempting the clergy from taxation. But this, it seems, was construed only to release their persons from taxes ; for, in 1706, it was found necessary to give them further encouragement, and it was accordingly provided “ that all ministers of the gospel that now are, or hereafter shall be, settled in this colony, during the continuance of their public service in the gospel ministry, shall have *164 their estates lying in the same town where they dwell, and all the polls belonging to their several families, exempted from the payment of rates.” And it is now held, in that State, that settled ministers of the Christian religion, their polls and estates lying in the society or town in which they dwell, are exempted from taxation (Wolcott on Direct Tax., 26. See 2 State Papers, folio, green, 26).
Though we have no statute provision, either before or since the Revolution, on the subject of ministers’ estates, yet we doubtless brought with us from Massachusetts, in the separation, in 1679 or 1680, the customs and usages of that State. I hope we have not diminished the stock of respect and attachment to the clerical profession with which we set up for ourselves, though I fear we have added little to it. It is fair to presume that we adopted the prevailing sentiments and the general usages of New England. From what we learn of that usage, and from the decisions on the subject, we are justified in believing that a settled minister, one bound to discharge the pastoral functions to a society bound to support him in return, is alone entitled to claim this privilege of exemption from the burden of taxes. The public are supposed to derive an advantage from his useful labors. But where a person is at liberty to preach or not, the public have nothing as a consideration for the privilege.
Till 1796, Mr. Kidder, being the minister of Dunstable, was entitled to receive a salary from the town. To tax his estate towards that salary would have been absurd. The town was bound to pay it without defalcation ; and, as a further encouragement for his services to the State, he was entitled to exemption from all taxes. But, since that period, neither the town of Dunstable nor the public have any further claims on Mr. Kidder. He has, therefore, no claim on them. He may labor in word and doctrine just as he pleases, and when and where he pleases. He may preach only once a year or every day in the year, just as he pleases ; or he may rest from his ministerial labors altogether. He may follow agriculture, commerce, or the profession of the law ; or he may mix these, as some have done, with the ministerial functions. If he is to *165 be exempt because he is a minister, and preaches, how often must he preach to work out his taxes ? Will one Sunday in the year answer the purpose? We must draw the line somewhere. If any preachers are exempt except settled ministers, why should not all who go about doing good in this way be exempt ? A Methodist itinerant preacher, or a Baptist, have the same claims in law as a Congregational preacher. Shall it be in the power of a presbytery at Philadelphia or in Scotland, or a Methodist bishop who made himself such, by ordaining a man to the church universal, as the practice is, to exempt that person’s property from paying taxes ? This would be enabling such men, or bodies of them, to confer civil privileges. The venerable council who ordained Mr. Kidder, or that which loosed him and declared that he was still an ordained minister, are of no greater consideration in our law than a Methodist bishop or Baptist association. I would not be understood to speak slightly of councils or of denominations. But I speak of them as they are viewed by the equal eye of the law, — as all upon a level.
Mr. Kidder having been once a settled minister, and his estate acqxiired while he was such, makes no difference in the case. While he was a settled minister, he had the privilege. When he ceased to be such, he became, in the eye of the law, weak, and as other men. It is not pretended in this country, generally, that the clerical character is indelible, — once a clergyman and always a clergyman; much less that once a settled minister and always such. The clerical character with us is easily put on, and it is as easily put off. Even ordination is easily obtained among the many different sects into which our country is divided, and it may be difficult, in some cases, to determine who has a right to call himself an ordained minister of the gospel. But it is not equally difficult to determine who is the settled minister of a corporate body, (a) Here, then, the line must be drawn, till the legislature is pleased to draw another. When they do, I shall cheerfully acquiesce. If it *166 is thought proper that every man who has once be'en ordained, and who has kept his garments pure and unspotted, as Mr. Kidder has done, should have this privilege conferred upon him, I shall be content. I am happy to find that the testimonials in favor of Mr. Kidder’s character and services are extremely favorable. But they cannot affect the merits of the question before us.
The plaintiff must become nonsuit, which was entered accordingly. (a)
Wingate, J., dissented from this decision.
[It was subsequently decided that the estate of a settled minister is exempt from taxation. The following is a condensed report of the case, so far as relates to this point.]
Humphrey Moore v. Benjamin Poole, Hillsborough, December Term, 1815, was an action on the case, against an assistant ■assessor of the United States Direct Tax, for enumerating, in the list of taxable property, the real estate of a settled minister, whereby, and by reason of said enumeration, the principal assessor proceeded to assess a tax, which was afterwards collected by distraint. The declaration averred, among other things, that the plaintiff was, at the time of said enumeration, “ and long before, and ever since hath been, and now is, a regularly ordained and settled minister of the gospel in the said town of Milford,[1] and, as such, his houses, lands, buildings, *167 and real estate, in the said town of Milford, for and during the whole of said time, have been and are, by the laws of the State of New Hampshire, exempted from taxation, and ho, the said plaintiff, is, and hath been during his said ministry, a person not liable to be taxed ; ” and that the defendant well knew these facts.
A demurrer to the declaration was overruled, and judgment was rendered for the plaintiff.
Smith, C. J.,
in delivering the opinion, discussed the meaning of the exemption in the United States Tax Law, of “ lands permanently or specially exempted from taxation by the laws of the State wherein the same may be situated; ” and held that this includes (besides lands now specially exempted by statute) lands which have always, or even generally (in opposition to specially), been exempted from the State land-tax, i. e. not taxed ; whether the omission depend for its basis on statute, common law, or usage.
He then said — “ If this be the true construction of the clause in question, let us now inquire whether the plaintiff’s lands are, by the State law, permanently or specially exempted from land tax.
“ I consider the decision in Kidder v. French et als., Hills-borough, April Term, 1807, as decisive to show that Mr. Moore’s farms are exempted from any tax made under the authority of the State, and consequently exempted from the United States land tax.
“ It may be said this is not a special exemption, — there is no express provision in the State law for it; and it is not a permanent exemption, — it depends for its duration on Mr. Moore’s continuing the settled minister of Milford. It is true it does so depend, but yet is as permanent in its nature as any exemption can be. All exemptions are in favor of persons or corporations holding for a certain use or purpose. The exemption is in favor of persons and particular interests, religion, literature, manufactures, &c. The exemption is made, not in respect of the lands, but the use : and, in the nature of things, *168 nan be no more permanent than the use. The exemption of all lands owned and occupied by all settled ministers is a permanent exemption, certain and definite.” [1]

 But we are not to suppose, from the express exemption of the poll, that ministers’ polls were taxed before. They certainly were not. In this act, the polls of paupers were exempted. Is it supposable that they ever were taxed? It was thought necessary to mention ministers’ polls, because, as certain polls were expressly exempted, an argument might have been drawn, from an omission of ministers, that it was the intention to tax their polls, though their estates had always been exempted. It is certainly not true that all lands in the town were ever taxed, or now are. Lands owned by the town are not taxed, and yet are not exempted by any statute; the parsonage, school-lot, &e., are of this description. All buildings are to be taxed; but was it ever heard of to tax a meeting-house, school-house? Were the public buildings in Exeter, Concord, Hanover, &c., ever taxed? There are, and always have been, exemptions, where the statute has not expressly made any. They depend on invariable usage, growing out of the reason and nature of the thing. They are more ancient than our statutes (1770), and are not repealed except by express clauses for the purpose, or by provisions necessarily and manifestly repugnant. *

J) It does not appear whether the tax complained of in this case was for the poll, estate, or both. Exception of the poll seems first to have *158 been introduced in the act of Dec. 26, 1798, ed. 1797, 519, ed. 1815, 548. This act omits president, professors, and tutors of college. The acts of Feb. 8, 1791, ed. 1805, 217, Feb. 22, 1794, ed. 1797, 202, 203, contain no exceptions.
Acts establishing method of making taxes, rates of polls and estate in the valuation, &c. : —
1. An act to establish an equitable method of making rates and taxes &c. Passed April 12, 1770. Acts, June Session, 1815, appendix 9. Preamble : No rule established by law to compel persons to pay in proportion to their income. The matter has been left to the arbitrary determination of selectmen, &c. In future, all taxes to be made and assessed in proportion to the amount of each person’s polls, ratable estate, &c. All male polls, &e.
(This act implies that ministerial taxes are to be made by same invoice.) '
2. Act passed Jan. 30, 1773 (not Jan. 2, 1772), 11.
3. Act July 2, 1776, ed. 1815, appendix, 511.
4. Act June 12, 1784, ed. 1815, appendix, 525.
5. Act Feb. 7, 1789, ed. 1815, appendix, 538.
6. Act Feb. 8, 1791, 257. Selectmen to assess the polls and estates within the town, according to the rules and directions of the law, their just and equal proportion of all sums voted to be raised at any legal meeting of the inhabitants, &e. Sect. 9 establishes the rates, &c.
7. Act Feb. 22, 1794, ed. 1815, appendix, 544.
8. Act Dec. 26, 1798, ed. 1815, appendix, 548. Taxes to be assessed on the polls and ratable estates in the manner following, viz.: Each poll from 18 to 70 (excepting those from 18 to 21 enrolled in the militia, ordained ministers, students of colleges, paupers, and idiots) to be valued, &c.
9. Act Dec. 24, 1803, 550. Same exception, with addition of president, professors, and tutors of colleges.
10. Act of Dec. 16, 1812, 263. Same exception as last.
All, with sundry additional acts, repealed, except act of Dec. 16, 1812.

 “ Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. A State may, if the legislature see fit, tax all the property owned by its municipal divisions; but to do so would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed. It is always to be assumed that the general language of statutes is made use of with reference to taxable subjects, and the property of municipalities is not in any proper sense taxable. It is, therefore, by clear implication, excluded. It is not, like government agencies, excluded from the power of tax laws, but it is beyond the grasp of their intent.”
Cooley on Taxation, 130,131.
See Gen. Laws, c. 53, § 2. Brewster v. Hough, 1839, 10 N. H. 138; Warden v. Manchester, 1876, 56 N. H. 508.

 A person regularly engaged and officiating as a reader in an Episcopal society, without ordination, is “a public teacher of piety, religion, and morality,” within the meaning of the Massachusetts Constitution. Sanger v. Inhabitants of Third Parish in Roxbury, 1811, 8 Mass. 285.

 For the construction of this statute, and an elaborate discussion of the meaning of the term “ ordained minister,” see Londonderry v. Chester, 1820, 2 N. H. 268. See also State v. Kean, 1839, 10 N. H. 347; State v. Winkley, 1843, 14 N. H. 480.

 Cambridge Platform, Wise, 211.

 The Platform (Wise, 208) considers officers as existing only in connection with a particular church. He that is clearly loosed from his office relation to the church whereof he was a minister cannot be looked upon as an officer, unless again orderly called unto office, and he may be again ordained. (“ Mr. if. W. had cast off his pastor’s place at I., and was now no minister, by the received determination of our churches.” Gov. Winthrop, vol. ii. Savage’s edition, 35.) It would seem, however, in early times, to have been allowable to ordain a minister to the church universal *161 at the same time he was ordained over a particular church and society. This seems to have been the idea of the council who dissolved the relation between Mr. Kidder and the church and town of Dunstable. They considered him as still retaining the character and office of an ordained minister, yet it is usual at this day to resettle a minister by installation, which is a sort of second ordination. It is believed that there were in early times, in New England, few, if any, ordained ministers unconnected with particular churches and towns.

 Every county court had the power to make sufficient provision for the maintenance of the ministry, and to rectify any defect, on complaint of any such, for want of means whereby comfortable to subsist. 1 Holmes, American Annals, 334.

 Quaire. Was it not decided in Mass. Supreme Court, Dana v. Groton, 1777 or 1778, that a minister disconnected with the church and town, though ho still continued to preach, was liable to bo taxed to the war, and to furnish soldiers, &c. P He relied on his ministerial character for exemption.

 See Washburn v. Fourth Parish in West Springfield, 1 Mass. 32.

 A settled minister is one inducted; settlement, among Presbyterians and Congregationalists, is induction among Episcopalians. 2 Boswell’s Life of Johnson, 10L

 See Hutchinson, Coll. Papers, 496 (Randolph).
“Magistrates, and ministers, and church elders pay no poll-money, or other taxes, upon lands or personal estates.” See also Id. 532.
Act N. H. March 10, 169| (flies), for raising money for support of government, &c. (passed assembly; quaere, council, &c.), enacted, &c., that a rate of £600 he forthwith made on all persons and estates, real and personal, throughout the province, without exception of any persons but ministers, according as it is hereafter proportioned to each town, &e.*

 The plaintiff was the minister of the town of Milford at the time in question. At a town-meeting held April 28, 1802, the town voted to unite with the church, and call Rev. H. Moore to be the minister of the town. It was voted “-to give him a settlement of $600, a salary of $400 per annum, and $100 a year when he was too old to preach.”

 President and Council, ministers and elders of churches, exempted in Province Laws of 1 Provincial Papers, 399.

 By the statute of Dee. 25, 1816, it was enacted, “That the real and personal estates of all ordained ministers of the gospel of every denomination, within this State, shall hereafter be assessed and taxed in the same way and manner as other estates are now, or hereafter may by law be taxed; any law, usage, or custom to the contrary notwithstanding. Provided, nevertheless, that nothing in this act shall be so construed as to affect any contract in writing heretofore made between any town in this State, and the minister thereof.”
An ordained minister not settled over any particular society was not exempt from taxation under the Massachusetts statute of 1811. Ruggles v. Kimball, 1815, 12 Mass. 337. See also, as to what constituted a “ settled ” minister, within the meaning of the exempting statute, Gridley v. Clark, 1824, 2 Pick. 403.
In more modern times, clergymen, instead of enjoying exemption from taxation, have been subjected, in Pennsylvania, to an occupation tax. Miller v. Kirkpatrick, 1857, 29 Pa. St. 226.